IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| HANA GEBREMEDHIN, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:24-cv-1636 |
| DARRYL K. GENTRY, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment and Plaintiff Hana Gebremedhin's Motion to Defer Summary Judgment.

This matter arises from Plaintiff Hana Gebremedhin's Mandamus action requesting the Court to direct United States Citizen and Immigration Services ("USCIS") to rule on her asylum application. On April 5, 2021, Gebremedhin, a native citizen of Ethiopia, filed for asylum. Gebremedhin qualified for employment authorization and continues to live in the United States while her application is pending. On January 4, 2023, Gebremedhin requested her application to be expedited; her request was denied. On August 8, 2024, she again requested for her application to be expedited; again, she was denied. To date, Plaintiff has not had an interview scheduled.

1

On September 18, 2024, Plaintiff filed this action before the Court. On November 18, 2024, Defendants moved for summary judgment. Finally, on December 12, 2024, Plaintiff moved to defer summary judgment. This Court will first consider Plaintiff's Motion to Defer Summary Judgment; then, Defendants' Motion for Summary Judgment. But first, this case requires some understanding of the asylum process.

The Immigration and Nationality Act directs the asylum division of USCIS, absent extraordinary circumstances, to conduct an initial asylum interview within forty-five days after the filing of the application and to adjudicate the application within one hundred eighty days. See 8 U.S.C. § 1158(d)(5)(A)(ii), (iii). Eligible applicants may reside and work in the United States while their application is adjudicated. See 8 U.S.C. § 1158(d)(2). In addition to affirmative asylum applications, the asylum division is mandated to conduct other asylum-related tasks. See e.g., 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. §§ 208.33; 8 U.S.C. § 1158(a). Furthermore, Congress has directed the asylum division to prioritize certain applications, such as Afghan Refugees under Operation Allies Welcome.

To deal with the large number of asylum applications that were not congressionally prioritized, USCIS schedules affirmative asylum applications along two tracks. First, they utilize a last-in, first-out ("LIFO") policy. Applications that are fraudulent,

2

technically deficient, or for a different agency priority are adjudicated first. The goal of LIFO is to discourage applications for the sole purpose of residing in the United States while an application is pending. Second, for applications not adjudicated in the LIFO process, USCIS employs a "backlog reduction effort"; plainly put, USCIS adjudicates the oldest applications first. Now, the Court will turn to Plaintiff's Motion to Defer Summary Judgment.

Fed. R. Civ. P. 56(d) "mandates that summary judgment be [postponed] when the nonmovant has not had the opportunity to discover information that is essential to his opposition." Pisano v. Strach, 743 F.3d 927, 931 (4th Cir. 2014). To defer summary judgment, the non-movant must put the court on notice as to which specific facts have yet to be discovered; vague requests that discovery is needed are insufficient. See McCray v. Maryland Dep't of Transp., Maryland Transit Admin., 741 F.3d 480, 484 (4th Cir. 2014). A district court may deny a Rule 56(d) motion "when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." Pisano, 743 at 931. Notably, in cases seeking judicial review under the APA, the review must be based on the administrative record. See Hyatt v. Unites States PTO, 146 F. Supp. 3d 771, 773 (E.D. Va. 2015). But in 706(1) APA claims, there is generally no record to consider because the agency has yet to act.

3

Thus, a party may use affidavits or declarations instead. See Fed. R. Civ. P. 56(c)(1)(A).

In this case, Plaintiff asks the Court to defer summary judgment to allow Plaintiff to conduct discovery on the Government's alleged reliance on mandamus in asylum applications, the detrimental effects of USCIS not adjudicating Plaintiff's application, and the LIFO and backlog reduction policies. But Plaintiff has not made specific requests; instead, Plaintiff makes vague inquiries into the practices of USCIS. See McCray, 741 F.3d at 484. For example, Plaintiff requests the reasons considered by USCIS when creating the LIFO and backlog reduction policies but fails to identify what specific documents would aid in her opposition to summary judgment. These vague requests are insufficient to defer summary judgment. Further, Plaintiff inherently controls the evidence related to their own well-being; there is no reason to delay summary judgment for evidence she already possesses. Finally, Plaintiff states that allowing discovery "will promote agency reform." But it is not the Court's place to reform USCIS.

In addition, Plaintiff has not shown *how* or *why* the requested information would be "sufficient to create a genuine issue of material fact such that it would have defeated summary judgment"; which is needed to delay summary judgment. Works v. Colvin, 519 F. App'x 176, 183 (4th Cir. 2013). The Government has provided

4

declarations stating their asylum policies, and Government declarations are accorded a "presumption of legitimacy." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004). Discovery will not change those policies. Plaintiff simply stating that discovery is needed to check the accuracy of those affidavits does not override the presumption afforded to the Government and does not satisfy Rule 56(d).

As there is not sufficient reason to delay, the Court will turn to Summary Judgment. Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. While the Court views the facts and inferences drawn in the light most favorable to the nonmoving party, the party opposing the motion for summary judgment must put forth specific facts showing a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden of the moving party may be discharged by simply pointing out "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

At bottom, Plaintiff puts forth two arguments under the APA and the Mandamus Act asking the Court to compel USCIS to adjudicate Plaintiff's application. See 5 U.S.C. § 706 (APA); 28 U.S.C. § 1361 (Mandamus Act). First, that USCIS is unlawfully withholding agency action. Second, that that application is unreasonably

5

delayed. As an initial matter, the standard for obtaining relief under the APA and Mandamus are functionally identical and will be considered together. See Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63-64 (2004).

First, the unlawfully withheld claim. 5 U.S.C. § 706(1) requires that a reviewing court compel agency action that is unlawfully withheld. See Gonzalez v. Cuccinelli, 985 F.3d 357, 365 (4th Cir. 2021). But the Supreme Court has stated that agency actions in 706(1) only include "discrete actions" that are "legally required." Norton, 542 U.S. at 64. Plainly, the action must have a mandatory deadline. Id.

As an initial matter, Plaintiff did not make an unlawfully withheld claim in their complaint. Rather, Plaintiff's complaint focused on their unreasonable delay claim. But "it is well-established that parties cannot amend their complaints through briefing[.]" S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013). Accordingly, Plaintiff cannot make an unlawfully withheld claim now.

Even if Plaintiff had made an unlawfully withheld claim in their complaint, Congress's mandate that USCIS interview applicants in forty-five days and adjudicate asylum cases in one hundred eighty days is only applicable in the *absence of exceptional circumstances*. See 8 U.S.C. § 1158(d)(5)(A)(ii),

6

(iii). Here, there are exceptional circumstances. In 2012, the total number of affirmative asylum applications was forty-one thousand, nine hundred and the backlog was fifteen thousand, five hundred twenty-six. In 2021, there were fifty-nine thousand, four hundred sixteen affirmative asylum applications; the backlog had risen to four hundred twelve thousand, four hundred twenty-three. But the number of applications rose sharply in 2022. And in 2023 the number of applicants was four hundred fifty-one thousand, four hundred seventy-six; the backlog had risen to one million, sixteen thousand, one hundred ninety-three. Through quarter three of 2024, USCIS received three hundred eleven thousand, five hundred sixty-six applications; the backlog had risen to one million, two hundred fifty-two thousand, two hundred thirty-five. This rapid increase in asylum applications is an exceptional circumstance. Thus, the forty-five day interview requirement and one hundred eighty day adjudication requirement does not apply; there is no mandatory deadline. See Norton, 542. U.S. at 63.

In sum, Plaintiff did not make an unlawfully withheld claim in their complaint; even if Plaintiff did, it fails because the exceptional circumstances language in 8 U.S.C. § 1158(d)(5)(A)(ii), (iii) is met due to the rapid increase in asylum request. Accordingly, Plaintiff's application is not being unlawfully withheld.

7

Second, the Court will consider if Plaintiff's application is being unreasonably delayed. The Court may only compel USCIS to adjudicate a case after the Court has determined the agency's delay was unreasonable. The Fourth Circuit has stated that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." Gonzalez v. Cuccinelli, 985 F.3d 357, 375 (4th Cir. 2021). Perhaps why the Government sought summary judgment in this case.

In unreasonable delay cases, the Fourth Circuit has used the six factors outlined in Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"). See Gonzalez, 985 F.3d at 375; South Carolina v. U.S., 907 F.3d 742, 759 (4th Cir. 2018). The factors are

> (1) the time agencies take to make decisions must be governed by a "rule of reason," (2) where Congress has provided a timetable . . . [it] may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) . . . the effect of expediting delayed action on agency activities of a higher or competing priority; (5) . . . the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety behind agency lassitude in order to hold that agency action is unreasonably delayed.

No single factor is dispositive, but the first and fourth factors often carry the greatest weight. See In re Core Communications, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008).

In this instance, the first two factors can be considered together. Congress has mandated USCIS, in the absence of exceptional circumstances, to interview asylum applicants within forty-five days and adjudicate asylum applications within one hundred eighty days. 8 USC § 1158(d)(5)(A), (ii), (iii). As stated above, the increase in the number of applications creates an exceptional circumstance. So, there is no congressional timetable.

Further, USCIS's LIFO and backlog reduction systems constitute a rule of reason. To determine if an agency acts with a rule of reason, the Court examines "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." <u>Mashpee Wampanoag Tribal Council, Inc. v. Norton</u>, 336 F.3d 1094, 1102 (D.C. Cir. 2003). John Lafferty, the Chief of the Asylum Division, provided a sworn declaration explaining the large backlog, the various strategies used to reduce the backlog, the effect of court cases on agency priorities, and the effects of congressional mandates on agency priorities. Specifically, Lafferty states the LIFO system works to prevent frivolous applications while the backlog reduction system ensures applications are not sitting indefinitely.

Plaintiff argues that without discovery it is impossible to know how the backlog reduction system works. But Lafferty's declaration states that the backlog reduction system deals with the oldest applications first. The fact there are some exceptions—

such as when there is a substantial risk to an applicant's wellbeing—does not negate that USCIS employs a rule of reason but supports it. Thus, USCIS employs a rule of reason; the first and second TRAC factors are in favor of the government.

Third, there is no increased risk to human health and welfare. Plaintiff is residing in the United States while her application is pending. While Plaintiff is separated from her husband, this alone is insufficient to say the system has an increased risk to her health and welfare. Further, Plaintiff states that she has been unable to contact her husband since 2021. Thus, it is unclear whether expediting her application, if it were approved, would improve her husband's situation. As a result, the third factor is in favor of the Government.

Fourth, expediting Plaintiff's application will prejudice USCIS and other applicants. USCIS's autonomy in administrating an overloaded asylum system will be interfered with. "The Attorney General is charged with balancing the need for adequate protections for asylum seekers against a backlog of [over one million] cases...how [USCIS] allocates those resources to address the burden of increasing claims is a calculation that courts should be loath to second guess." Blanco de Belbruno v. Ashcroft, 362 F.3d 272, 280 (4th Cir. 2004).

In addition, other applicants who have been in the queue longer will be pushed back if the Court orders USCIS to expedite

10

Plaintiff's application. Plaintiff argues that there is no way of knowing if expediting her application will harm other applicants. This is not true. Inevitably there are only so many interview spots. If one applicant is expedited, there is one less spot for the applicants who have been waiting longer. Thus, the fourth factor favors the government.

Fifth, the interests of Plaintiff being prejudiced by the delay are no greater than any other asylum applicant. Plaintiff has alleged no exigent circumstances or specific danger to her that would require an expedited process. Assertions of stress-related ailments due to the waiting process are insufficient to require an expedited process and, unfortunately, not unique amongst applicants. Therefore, the fifth factor is also in favor of the government.

Sixth, there are no allegations of any impropriety by USCIS. Thus, the sixth factor helps neither party. In short, five of the six TRAC factors are in favor of the government; one factor is neutral.

For the forgoing reasons, Plaintiff's Motion to Defer Summary Judgment should be DENIED; and

Defendants' Motion for Summary Judgment should be GRANTED; this case is DISMISSED.

An appropriate Order shall issue.

_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 17, 2025